## EXHIBIT A

**AFFIDAVIT IN SUPPORT OF COMPLAINT FOR FORFEITURE IN REM**

I, Adam Hoberg, being first duly sworn, hereby depose and state as follows:

1.	The Veterans Affairs Office of Inspector General (VA-OIG) began an investigation of Timothy RODGERS in 2022 following an anonymous complaint on the VA-OIG Hotline advising that RODGERS had exaggerated his VA disability to receive increased VA compensation benefits.

2.	At the time of the complaint, RODGERS was rated 100% disabled for numerous service-connected conditions, including seizures, post-traumatic stress disorder ("PTSD"), migraines, sleep apnea, back issues, leg issues, and traumatic brain injury ("TBI").

3.	In addition, RODGERS received a special monthly consideration based on aid and attendance following a 2019 rating decision where he represented that he needed permanent, full-time assistance with daily living—including dressing, toileting, showering, medication management, cooking meals, using stairs, and transportation. RODGERS also claimed that he could not drive, used a walker to ambulate, and that he only left the house to attend doctor's appointments and church. As a result, RODGERS was receiving $9,752.46 per month from the VA.

4.	In addition to the $9,752.46 monthly payment that RODGERS began to receive in 2019, RODGERS was awarded backpay of $294,631.73 to account for his disability dating back to October 2014 (hereinafter the "VA Backpay"). On June 10, 2020, the VA sent a wire payment for this amount to RODGERS. Just months before, RODGERS and his wife, Ashley Rodgers, filed for Chapter 13 bankruptcy.

5.	Following the anonymous complaint, the VA-OIG's investigation has revealed that RODGERS seriously exaggerated his physical disabilities. Photos and videos obtained by the VA

confirm statements by his wife, multiple girlfriends, and other witnesses that RODGERS can ambulate without any sign of disability and care for himself without assistance by others.

6. The results of the VA-OIG's investigation were submitted to the Veterans Benefits Administration (VBA) to determine if RODGERS was properly rated and, if so, the extent of the VA's overpayment. In a September 2022 rating decision, the VBA proposed a reduction of RODGERS' monthly rate of compensation from $9,752.46 to $3,666.94 to account for the overpayment.

7. Rodgers is a veteran who served in the Army from January 24, 2008, to October 5, 2014, and served multiple tours in Iraq and Afghanistan. He was discharged in 2014 following a service-related accident.

8. RODGERS applied for VA compensation benefits at the time of his discharge and in his initial Rating Decision on December 5, 2014, he was determined to be 90% disabled based on several conditions—including sleep apnea, PTSD/depression, right shoulder injury, back injury, migraines, vertigo, and tinnitus.

9. Since his initial Rating Decision in 2014, RODGERS has appealed his Rating and sought additional VA benefits—including Individual Unemployability (IU) benefits, Aid & Attendance benefits, and Special Monthly Compensation (SMC). In support of his requests for a higher disability rating and these additional benefits, RODGERS has submitted documents and made representations during medical examinations claiming that he could not stand for long periods of time, lift more than five pounds, care for himself, use the toilet, drive, walk or stand for extended periods, and ambulate without a walker.

10. In further support of his requests for a higher disability rating and additional VA benefits, RODGERS submitted sworn statements to the VA from his wife, Ashley Rodgers, and Jason Reyna, a friend and former service member. Through his investigation SA Vasil determined that the statements

contained in these documents are false. SA Vasil has also determined that at least one declaration—the sworn declaration of Ashley Rodgers—was fraudulently created and executed without her permission.

11. On February 5, 2019, RODGERS electronically submitted a document to the VA titled "Sworn Declaration of Jason Thomas Reyna." The document includes the statement: "I know for a fact his spouse manages his finances, administers his medication, helps him around the house with his mobility, plans and prepares meals, and is his VA certified caregiver. I have witnessed this during multiple visits with his family." The document contains an electronic signature that reads "Jason T. Reyna."

12. On July 20, 2022, VA-OIG agents interviewed Reyna. He was shown the document titled "Sworn Declaration of Jason Thomas Reyna." Although Reyna stated that he had produced the document, he admitted that he had not visited RODGERS at his residence in Illinois and had not seen him since the two were in the Army many years earlier. RODGERS did not marry Ashley until several years after he left the Army and returned to Illinois. SA Vasil later confirmed with Ashley that she had never met Reyna and he had never been in the house she shared with RODGERS while she was present.

13. On March 26, 2019, RODGERS electronically submitted a document to the VA titled "Sworn Declaration of Ashley Renee Rodgers." This document is written in the same format as the document titled "Sworn Declaration of Jason Thomas Reyna." The document included several statements regarding RODGERS' disabilities and level of care, including:

- Ashley is a former licensed social worker;
- Ashley assists Rodgers with personal hygiene and assists with bathing;
- Rodgers needs complete assistance and care while experiencing regular Grand Mal Seizures;
- Rodgers needs assistance getting out of bed daily and requires assistance getting out of chairs or off the ground;
- Rodgers uses a walker for ambulation and if not assisted, he staggers, trips, and falls;

- Rodgers requires assistance with dressing his lower body; and
- Rodgers cannot legally drive and is "totally reliant upon [Ashley] and family members for transportation."
- Caring for Rodgers is a "full time task for [Ashley]."

14. On March 9, 2022, SA Vasil interviewed Ashley Rodgers at her parents' home. SA Vasil showed her the "Sworn Declaration of Ashley Renee Rodgers" and asked her if she recognized the document. She advised she had never seen the document and denied signing it. Other than the statement that RODGERS does not have a valid driver's license, Ashley stated that she didn't agree with any of the other statements made in the document. Ashley stated she believed RODGERS had a digital copy of her signature and used it to create the document on the MacBook Air device that they both shared.

15. During the course of this investigation, video and photographs were obtained showing RODGERS performing many of the physical acts he had advised the VA he could not perform during several exams and documents he submitted—including the sworn declarations listed above. Several witnesses have also described RODGERS' physical abilities to far exceed what he had told the VA he was able to accomplish.

16. Through the course of this investigation I have obtained financial records for financial accounts held by RODGERS, including those at Navy Federal Credit Union (NFCU) and Edwards Jones Company (Edward Jones). The records revealed the following:

17. As mentioned in Paragraph 4, on June 10, 2020, the VA Backpay of $294,631.73 was deposited in the RODGERS' NFCU account ending in 0976 (hereinafter "NFCU Account 1").

18. On June 16, 2020, a cashier's check in the amount of $185,000 drawn on NFCU Account 1 was deposited in an Edward Jones investment account ending in 4227 (hereinafter "Investment Account 1"). Investment Account 1 was opened by the RODGERS' prior to this deposit and had a zero balance until the $185,000 deposit on June 16, 2020.

19. On September 29, 2021, $27,000 was transferred from the Investment Account 1 to a second Edward Jones investment account ending in 2254 (hereinafter "Investment Account 2"). Timothy and Ashley RODGERS are the owners of Investment Account 2. On the same day, $27,000 was wired from Investment Account 2 to a second NFCU account ending in 6399 (hereinafter "NFCU Account 2"). Timothy and Ashley RODGERS are the owners of NFCU Account 2.

20. On October 2, 2021, a check payable to "Greenmount Road HD" in the amount of $26,417.58 was drawn on NFCU Account 2, signed by RODGERS. Records obtained from Green Mount Road Harley-Davidson in O'Fallon, Illinois show that the October 2, 2021, check was used to purchase a black 2021 Harley-Davidson FLTRX Road Glide with Vehicle Identification Number: 1HD1KHC19MB651069.

21. Investigators also noticed that on July 30, 2020, the amount of $110,000 was transferred from Investment Account 1 to Investment Account 2.

22. On September 11, 2020, the amount of $67,736.81 was wired from Investment Account 2 to Laura Buick GMC, Inc. in Collinsville, Illinois for the purchase of a 2019 GMC Yukon Denali (hereinafter the "Yukon"). Timothy and Ashley RODGERS were the purchasers of the Yukon.

23. In April of 2023 I received records showing that Timothy RODGERS traded the Yukon in exchange for a 2021 Chevrolet Silverado Truck with Vehicle Identification Number: 1GCUYEED0MZ243196 from Schmitt Chevrolet in O'Fallon, IL. The records further revealed that the value of the Yukon exceeded the value of the Silverado at the time of this transaction. Therefore, Rodgers received a cashier's check from Schmitt Chevrolet in the amount of $8,794.42.

24. Based on the foregoing, declarant believes that the 2021 Chevrolet Silverado Truck with Vehicle Identification Number: 1GCUYEED0MZ243196, with all accessories, attachments, and components thereon constitutes property purchased with funds constituting or derived from proceeds

of Title 18, United States Code, Section 1343, and is subject to forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(C).

25. Based on the foregoing, declarant believes that the 2021 Harley-Davidson FLTRX Road Glide with Vehicle Identification Number: 1HD1KHC19MB651069, with all accessories, attachments, and components thereon constitutes property purchased with funds constituting or derived from proceeds of Title 18, United States Code, Section 1343, and is subject to forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(C).

Pursuant to 28 U.S.C. § 1746(2), I declare under penalty of perjury that the foregoing is true and correct.

Executed on this ___25th___ day of April, 2024.

_____*Adam Hoberg*_____
ADAM HOBERG
Special Agent
Federal Bureau of Investigation